

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 1 2 2014

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on June 12, 2014

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89060-9 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| LONNIE CURTIS LAMAR, | ) | |
| Respondent. | ) | Filed __JUN 1 2 2014__ |

MADSEN, C.J.—After an alternate was substituted for an indisposed juror, the trial court told the reconstituted jury that the remaining original jurors should bring the alternate "up to speed" as to what had already occurred and deliberate from there. The defendant claimed error for the first time on appeal because the jury was not instructed to begin deliberations anew. The Court of Appeals concluded the claimed error was a violation of CrR 6.5 that can be raised for the first time on appeal and reversed because the rights to jury impartiality and unanimity were violated. The State argues that the error was only a rule violation that does not constitute manifest constitutional error that may be raised for the first time under RAP 2.5(a)(3).

We affirm the Court of Appeals, although under a different analysis. It is unnecessary to address CrR 6.5 because the trial court's affirmative instruction to the reconstituted jury violated the right to a unanimous jury verdict regardless of any violation of CrR 6.5.

## FACTS

After the State rested in Lamar's trial on one count of rape of a child and one count of child molestation, the trial court gave jury instructions, including the following instruction on the jurors' duty to deliberate together in an effort to reach a unanimous verdict:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to re-examine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

Clerk's Papers at 50 (Jury Instruction 2).

The jury deliberated for about 45 minutes to an hour on Friday afternoon. The next Monday morning, one of the jurors notified the court he was ill and could not continue. At a hearing to address this problem, counsel for both parties agreed to replace the juror with the alternate juror.[1]

---

[1] CrR 6.5 provides in part:
> When the jury is selected the court may direct the selection of one or more additional jurors, in its discretion, to be known as alternate jurors. . . . If at any

The court said it would tell the other jurors that they should review their Friday deliberations with the alternate. There were no objections. When the jury was brought into the courtroom, the court told the jury that an alternate would replace the ill juror. The court then instructed the reconstituted jury:

> What I will advise you to do is this: When you go back to the jury room and begin your deliberations, you should spend some time reviewing, recapping with [the alternate] any discussion that you may have already had Friday in terms of the case so that he's first brought up to speed in terms of whatever the deliberative process was.

> Then once that's been done, resume your deliberations without any other hitches or anything else.

> . . . .

> So with that, the court will be in recess and you can begin your deliberations.

3 Verbatim Report of Proceedings (VRP) at 430-31. The court did not reinstruct the jurors on their duty to deliberate together in an effort to reach unanimity after considering the evidence impartially with the other jurors, nor did the court instruct the jury to disregard prior deliberations and begin anew. Neither party objected to the instructions the court gave or to the failure to give any further instruction.

About four hours later the jury returned with its verdicts, acquitting Lamar of rape of a child and convicting him of child molestation. The court polled the jury. Each juror answered "yes" when asked if the verdicts were "how you voted on both of these counts." 3 VRP at 432-33.

---

time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged, and the clerk shall draw the name of an alternate who shall take the juror's place on the jury.

Lamar appealed, arguing that the trial court violated his constitutional right to an impartial jury by failing to instruct the reconstituted jury to disregard any prior deliberations and begin deliberating anew. He argued his conviction should be reversed. The Court of Appeals observed in a footnote that the claimed error was manifest error affecting a constitutional right that could be raised for the first time on appeal. The court held that the trial court's failure to instruct the jury to disregard prior deliberations and begin deliberations anew violated Lamar's constitutional rights to an impartial jury and a unanimous jury verdict. The court reversed his conviction and remanded for a new trial. The State then sought discretionary review of this decision.

## DISCUSSION

We are asked to determine whether the Court of Appeals erred by addressing the claimed constitutional violation when no objection had been made to the instructions given the reconstituted jury. The State concedes that pursuant to CrR 6.5 the trial court erred when it failed to instruct the jury it must begin deliberations anew after the alternate was seated on the jury.[2] The State argues, however, that this was only a rule violation that does not rise to the level of manifest error affecting a constitutional right within the meaning of RAP 2.5(a)(3). Accordingly, the State argues, the claimed error cannot be raised for the first time on appeal.

We agree that CrR 6.5 was violated, as the State concedes. However, regardless of this rule violation, the trial court violated Mr. Lamar's constitutional right to a

---

[2] CrR 6.5 requires that when an alternate juror is substituted for another juror during deliberations, "the jury shall be instructed to disregard all previous deliberations and begin deliberations anew."

unanimous verdict by an impartial jury when the trial court instructed the jurors to bring the alternate "up to speed" on the deliberations that had already occurred and go on from there. This instruction affirmatively told the reconstituted jury *not to deliberate together* as is constitutionally required.

### RAP 2.5(a)(3)

Under RAP 2.5(a)(3), an "appellate court may refuse to review any claim of error which was not raised in the trial court," but there are exceptions to this general rule. One exception is that "a party may raise . . . manifest error affecting a constitutional right" for the first time on appellate review. *Id.* This exception recognizes that "[c]onstitutional errors are treated specially because they often result in serious injustice to the accused." *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988). However, the exception is not intended as a method of securing a new trial whenever there is a constitutional issue that was not raised at trial. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

Rather, a defendant must make a showing that satisfies requirements under RAP 2.5(a)(3). For a claim of error to qualify as a claim of manifest error affecting a constitutional right, the defendant must identify the constitutional error and show that it actually affected his or her rights at trial. The defendant must make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial. *State v. Davis*, 175 Wn.2d 287, 344, 290 P.3d 43 (2012); *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011); *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). "[T]o determine whether an error is

practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *O'Hara*, 167 Wn.2d at 100. "If the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim, the alleged error is not manifest." *Davis*, 175 Wn.2d at 344.

The requirements under RAP 2.5(a)(3) should not be confused with the requirements for establishing an actual violation of a constitutional right or for establishing lack of prejudice under a harmless error analysis if a violation of a constitutional right has occurred. The purpose of the rule is different; RAP 2.5(a)(3) serves a gatekeeping function that will bar review of claimed constitutional errors to which no exception was made unless the record shows that there is a fairly strong likelihood that serious constitutional error occurred.

### State constitutional right to a unanimous jury verdict

Our state constitution requires that in a criminal prosecution an impartial jury render a unanimous verdict. CONST. art. I, §§ 21, 22; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980).

Jury unanimity means that jurors should reach "consensus . . . through rational, persuasive argument" among themselves. Saul M. Kassin, *The American Jury: Handicapped in the Pursuit of Justice*, 51 OHIO ST. L. J. 687, 703 (1990). Neither the use of coercion nor concurrence by compromise constitutes proper deliberation. Thus,

consensus "should not be achieved through heavy-handed social pressure," where jurors who disagree with the majority are "beaten, bullied, or harangued into surrendering their convictions for the purpose of returning a verdict." *Id.*

Unanimity should not be achieved by mere acquiescence of jurors holding a minority view to the majority view:

> "[T]welve jurors must concur before a verdict can be reached. . . . In determining the verdict, it is the duty of the jurors to consider carefully the evidence, and the views and arguments of their fellow jurors. The law contemplates that jurors shall, by their discussion, harmonize their views, if possible, but not that they shall compromise with their consciences and yield to the majority for the mere purpose of agreement.

*State v. Ring*, 52 Wn.2d 423, 428, 325 P.2d 730 (1958).

As we recently noted, "'[T]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.'" *Jones v. United States*, 527 U.S. 373, 382, 119 S. Ct. 2090, 144 L. Ed. 2d 370 (1999) (alteration in original) (quoting *Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896)), *quoted in State v. Guzman Nuñez*, 174 Wn.2d 707, 719, 285 P.3d 21 (2012).[3]

Our state approach, evidenced, for example, by the quotations above from *Nuñez* and *Ring*, is in accord with the American experience of jury unanimity. In an often-cited passage, the California State Supreme Court said:

> The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the

---

[3] The Sixth Amendment right to unanimous jury verdicts in federal criminal trials does not extend to the states under the Fourteenth Amendment due process clause. U.S. CONST. amends. VI, XIV; *Apodaca v. Oregon*, 406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972); *see also Johnson v. Louisiana*, 406 U.S. 356, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972). As noted, our state right to a unanimous jury is a state constitutional right. CONST. art. 1, § 21.

7

common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint.

*People v. Collins*, 17 Cal. 3d 687, 693, 552 P.2d 742, 131 Cal. Rptr. 782 (1976).

Thus, a unanimous jury vote does not necessarily mean that unanimity in the constitutional sense has been attained. Rather, it is a consensus reached after each juror examines the evidence and the parties' arguments about what the evidence means, in light of the jury instructions, and all of the jurors exchange their individual perceptions, experiences, and assessments.

### The instruction to the reconstituted jury is manifest error affecting a constitutional right

Here, before the jury deliberations commenced on Friday afternoon, the jurors were instructed to deliberate together in the constitutionally required manner. However, after the alternate juror was substituted, the reconstituted jury was not instructed on its duty to engage in this deliberative process anew. Instead, the jury was specifically instructed to deliberate together only with respect to whatever remained to be addressed. The record thus shows instructional error that affected Lamar's constitutional right to a unanimous jury verdict. The asserted error had practical and identifiable consequences in Lamar's trial because if followed, its effect was to bar the reconstituted jury from deliberating together on all aspects of the case against him.

We conclude, therefore, that the erroneous instruction to the jury is manifest error affecting the constitutional rights to a jury trial and a unanimous verdict. *See* CONST. art. I, § 21. This conclusion is consistent with our past recognition that jury instructions that fail to require a unanimous verdict constitute manifest error affecting a constitutional right. *Scott*, 110 Wn.2d at 688; *see O'Hara*, 167 Wn.2d at 100-01; *State v. Carothers*, 84 Wn.2d 256, 262, 525 P.2d 731 (1974), *disapproved of on other grounds by State v. Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984).

The record shows the claimed error and that it was apparent at the time it occurred. Because the threshold showing required by RAP 2.5(a)(3) is made on this record, we will next consider the asserted constitutional error on the merits despite Lamar's failure to object.

Constitutional right to a unanimous jury was violated

This record shows that the asserted constitutional error occurred and impaired Lamar's right to jury unanimity.

"Juries are presumed to follow instructions absent evidence to the contrary." *State v. Dye*, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013); *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007). The trial court initially gave instructions that the jurors had the duty to discuss the case with each other and to deliberate together in an effort to reach a unanimous verdict. However, when the sick juror was excused, the instruction on unanimity was not repeated and instead the remaining jurors were affirmatively told that they were to inform the alternate of what had already taken place in the deliberations and

then continue deliberations from that point. Thus, all of the members of the reconstituted jury could reasonably conclude only that the later instruction, being given at the critical point when the alternate was seated, overrode any inconsistent earlier instruction and must be followed. We presume they followed the instruction given when the alternate joined the deliberating jury.

Accordingly, the reconstituted jury did not deliberate as constitutionally required. The jurors' entire course of deliberations was infected by the erroneous instruction that dictated that the alternate juror would have no part in any of the deliberative process that occurred on Friday and which was to stand under the instruction given. The alternate had no opportunity to offer his views or try to convince his fellow jurors of a different view if he disagreed with any determinations about the evidence or anything else that had been decided. Nor were the rest of the jurors alerted to the requirement that they consider the view of the alternate juror. But remaining open to another juror's views is critical in the deliberative process. "'One honest doubter may be right, and it is as much the duty of the eleven to give open-minded and candid consideration to the views of one as for him to give open-minded and candid consideration to the views of the eleven.'" *Ring*, 52 Wn.2d at 427 (quoting *State v. Keeble*, 49 S.D. 456, 207 N.W. 456, 458 (1926)).

Of course we do not know what actually occurred on Friday and so do not know what was addressed. And a court must not intrude into the jury deliberations to determine what the jury has decided or why, or how the jury viewed the evidence. *See generally State v. Elmore*, 155 Wn.2d 758, 770-71, 123 P.3d 72 (2005); *State v. Cuzick*,

85 Wn.2d 146, 149-50, 530 P.2d 288 (1975). But whatever the substance of Friday's deliberations, the constitutional flaw was the erroneous instruction that affirmatively told the reconstituted jury not to revisit and deliberate together with regard to anything discussed on Friday.

The State maintains, however, that the results of polling the jury show that unanimity was in fact attained and therefore there was no constitutional infirmity affecting Lamar's right to a jury trial and a unanimous verdict.

Polling a jury, when properly carried out, is generally evidence of jury unanimity. However, polling may not be effective to establish that a defendant's right to unanimity was secured if the record affirmatively shows a reason to seriously doubt that the right has been safeguarded. *See State v. Badda*, 63 Wn.2d 176, 182-83, 385 P.2d 859 (1963) (the case involved multiple defendants, multiple counts, and special verdicts, and although the record showed a minute entry noting that the jury had been polled, the record did not show that all 12 jurors unanimously agreed as to each verdict but did show that the jury had not been instructed on the requirements of a unanimous verdict; the court held the polling did not establish unanimity, and "[i]n a criminal case we must be certain that the verdict is unanimous").

As noted, we presume that the jury followed the instruction it was given when the alternate was seated and took up where the deliberations had ended on Friday. Any determinations that were made on Friday then became part and parcel of the verdicts ultimately reached by the jury, even though the alternate had not participated in Friday's

deliberations. Under the trial court's instruction, none of the jurors would have had any reason to doubt the propriety of this process and each would naturally respond that the verdict was his or her own. Under these circumstances, polling the jury does not establish unanimity.

### No argument made that the error is harmless constitutional error

The constitutional error that occurred is presumed prejudicial, and the State bears the burden of showing that it was harmless beyond a reasonable doubt. *State v. Lynch*, 178 Wn.2d 487, 494, 309 P.3d 482 (2013); *see Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). The State makes no attempt in its briefing to this court to show harmless error, and accordingly the presumption of prejudice stands.[4] Mr. Lamar's conviction must be reversed.

## CONCLUSION

In a criminal trial, a jury verdict finding a defendant guilty of committing a crime must be unanimous. The affirmative instruction given to the reconstituted jury constitutes manifest error affecting the constitutional right to a unanimous jury verdict under article I, section 21 of the Washington State Constitution. Accordingly, the defendant could raise the asserted error for the first time on appeal.

On the merits, the instruction violated the defendant's right to a unanimous jury verdict and this constitutional violation is presumptively prejudicial. The State does not

---

[4] The State may have confused the necessary showing required of a defendant under RAP 2.5(a)(3) with the necessary showing required of the State under the constitutional harmless error analysis. Contrary to the State's apparent belief, the Court of Appeals did not place the burden on the State to show an absence of prejudice for purposes of RAP 2.5(a)(3), but rather placed this burden on the State for purposes of the harmless error inquiry.

argue that the error was harmless. Therefore, the defendant's conviction must be reversed and this case remanded for retrial. The Court of Appeals is affirmed.

No. 89060-9

_Madsen, C.J._

WE CONCUR:

_____      _Wiggins, J._

_Owens, J._     _González, J._

_Fairhurst, J._     _Gordon McCloud, J._

_Stephens, J._     _Bridgewater, J.P.T._

14